MARTHA F. RUSSO *v.* HOCHSCHILD KOHN & CO., INC.

[No. 55, October Term, 1944; On Re-argument, No. 21, January Term, 1945.]

*Decided March 2, 1945.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, MELVIN, BAILEY, CAPPER, and HENDERSON, JJ.

The cause was reargued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, MELVIN, HENDERSON, and MARKELL, JJ.

*Richard W. Case,* with whom were *R. E. Lee Marshall* and *Marshall, Carey & Doub* on the brief, for the appellant.

*Thomas G. Andrew* for the appellee.

GRASON, J., delivered the opinion of the Court.

Appellant sued appellee in the Court of Common Pleas of Baltimore City, in assumpsit, for alleged special damages directly resulting to her from a breach of warranty of fitness of certain hair lacquer pads sold by appellee

to appellant. The second plea of appellee to the declaration is as follows: "That the Plaintiff, on or about September 30, 1943, with full knowledge of the alleged breach of warranty, and the resulting damage, returned the unused hair lacquer pads complained of to the Defendant and accepted credit on her account with the Defendant for $1.10, the full purchase price." To which replication was made: "As to the second plea filed by defendant, plaintiff states that she returned the unused hair lacquer pads at the request of the defendant or the agents of defendant acting in the scope of their employment; that at the time plaintiff returned the aforementioned hair lacquer pads, she was still suffering from the infection caused by said hair lacquer pads, plaintiff did not intend to in any way waive her right to special damages as and for the injury caused plaintiff because of defendant's breach of warranty in the premises." To this replication appellee demurred and the court sustained the demurrer without leave to amend, and judgment was entered in favor of appellee for costs. From the judgment so entered, this appeal was taken.

The appellant contends:

"I. The lower Court erred in holding as a matter of law that plaintiff had rescinded the sale under the facts admitted by defendant's demurrer," and

"II. Under the proper interpretation of the Uniform Sales Act as codified in Maryland in Article 83 of the Annotated Code, plaintiff can both rescind the sale and sue for special damages for breach of warranty."

The appellee claims:

"1. The return of the merchandise and acceptance of credit for the purchase price was a rescission of the contract of sale.

"2. Article 83, Section 87(2) of the Maryland Code provides that no other remedy can thereafter be granted when the buyer has been granted one of the remedies under Section 87(1).

"3. Article 83, Section 88 of the Maryland Code does not in any way affect the defense of election of remedy."

Section 87 of the Article aforesaid, among other things, provides:

"(1)    Where there is a breach of warranty by the seller, the buyer may, at his election—

   *   *   *   *   *

"(d)  Rescind the contract to sell or the sale and refuse to receive the goods; or, if the goods have already been received, return them or offer to return them to the seller and recover the price, or any part thereof, which has been paid."

Subsection (2) of said section provides when the buyer has claimed and been granted a remedy in any of the ways provided in subsection (1) no other remedy can thereafter be granted. Section 88 of the Article aforesaid provides: "Nothing in this sub-title shall affect the right of the buyer or the seller to recover interest or special damages in any case where by law interest or special damages may be recoverable, or to recover money paid where the consideration for the payment of it has failed."

It is the position of appellee that when appellant, at its request, returned the unused hair lacquer pads and accepted a credit on her account for $1.10, which was the purchase price, she elected to rescind the contract and waived damages for the injuries alleged in the declaration. It is argued that the provision in Section 88, to wit, that: "Nothing in this sub-title shall affect the right of the buyer * * * to recover * * * special damages in any case where by law * * * special damages may be recoverable," does not in any way affect the defense of election of remedy. Appellant contends that the provisions quoted from Article 87 apply only to cases where ordinary damages have been sustained, as distinguished from special damages, resulting from the breach of warranty. Aside from the intent of appellant to rescind, the provision (1) (d) of Section 87, viz.: "If the goods have already been received, return them or offer to return them to the seller and recover the price, or any part thereof, which has been paid," standing alone is broad

enough to prevent recovery by appellant in this case. True she has only been paid the purchase price of the hair lacquer pads, which would be the damages in the ordinary case resulting from a breach of warranty. If this strict rule is to be applied she is not put in *statu quo,* because she has been paid only ordinary damages and has not been paid the special damages alleged in the declaration to have been caused directly by the breach of warranty. It is suggested by appellee that the facts in this case might support an action in deceit. This Court has decided: "Whatever may be the rule elsewhere, it is the established law of this state that, to support a charge of fraud based upon misrepresentation, 'knowledge of the falsity by the party making the representation' must be shown. *Reynolds v. Evans,* 123 Md. 372, 91 A. 564; *Boulden v. Stilwell,* 100 Md. 543, 60 A. 609, 1 L. R. A. N. S., 258. Or, as stated in the case last cited: "The foundation of the action is actual fraud, and nothing short of this will suffice. Consequently, a misrepresentation believed by the speaker to be true, though induced by his ignorance or negligence, will not sustain an action for deceit. There must be, either knowledge of the falsity of the representation, or such reckless indifference to truth in making it, as is held equivalent to actual knowledge.' While the court in that case was discussing fraud in connection with an action of deceit, its language is equally applicable to the fraud charged in this case." *Keiner v. Commerce Trust Co.,* 154 Md. 366, 374, 141 A. 121, 124. *Poe, Pleading & Practice,* Tiffany's Ed., Vol. 1, Sec. 201.

If appellant is relegated to an action in tort for deceit, she could not sustain the burden of proof that the representation of the appellee or its agents was both false and fraudulent, and such effort would be futile. If the contention of appellee is correct, then the appellant cannot sue in assumpsit for special damages because at the request of appellee she returned the unused hair lacquer pads and accepted a credit of $1.10, but she must resort to an action in deceit, which, under the circum-

stances of this case, she could not possibly maintain. The action of appellee in requesting the return of the article and crediting appellant with $1.10, would be an inexpensive method of relieving itself from responsibility to answer for special damages sustained by appellant as a direct and proximate cause of the breach of its warranty of fitness. If this is law, appellant is not placed in *statu quo*. In the language of the books she is not made whole, but in the end, if appellee is correct, she is left without remedy for recovery of special damages.

Both Section 87 and Section 88 of Article 83 of the Code come under the subsection entitled "Uniform Sales Act." They are comprehended by that sub-title. In dealing with Section 87 we cannot close our eyes to Section 88. Certainly Section 88 was intended by the Legislature to have a purpose, and that purpose was that for every wrong within the purview of the Uniform Sales Act suffered by a citizen, there would be provided by the Act a just remedy. Manifestly the appellant goes without justice, if the contention of the appellee is correct. If Section 88 is construed to save the contract in cases where special damages have been sustained, notwithstanding the contract has been rescinded as to ordinary damages, appellant could sue under the contract. We think that is the intention of Section 88. This construction, in our opinion, is just, for it would prevent the ordinary person, unacquainted with the niceties of the law, from being the victim of sharp practice and, in some cases, entrapment. We hold that the contract in this case, even if rescinded as to ordinary damages, was not rescinded with reference to special damages, and that an action in assumpsit on the contract will lie to recover special damages directly resulting from the breach of warranty of fitness.

We do not think that the case of *Impervious Products Co. v. Gray*, 127 Md. 64, 96 A. 1, is in point. Gray was sued. He could have pleaded recoupment or set off. He chose to plead recoupment and the verdict was for the defendant. He thereafter instituted suit for damages for

breach of warranty. The Court held he was bound by his election in the first case.

Appellee's demurrer to appellant's replication to its second plea mounted up to the first error. As the plea set up that appellant had been credited with $1.10, which was ordinary damages, it was bad. The declaration claimed special damages, and the fact appellant had received ordinary damages was immaterial. The demurrer should have been sustained as to appellee's second plea.

*Judgment reversed, with costs to appellant, and case remanded.*

HENDERSON and MARKELL, JJ., concur in the result, MARKELL, J., filing the following opinion:

Judge Henderson and I concur in the result for the following reasons:

1. This is an action against a dealer, not a manufacturer, for breach of an implied warranty, of fitness of goods sold, under Sec. 15(1) of the Uniform Sales Act [Code, 1939, Art. 83, Sec. 33(1)]. At common law such a warranty was not implied when the seller was not a manufacturer (or grower) of the thing sold. *Luria Bros. & Co. v. Klaff,* 139 Md. 586, 592-595, 115 A. 849. Hitherto this new cause of action, created by the Sales Act, has been viewed somewhat strictly by this court. *Child's Dining Hall Co. v. Swingler,* 173 Md. 490, 197 A. 105; *Poplar v. Hochschild, Kohn & Co.,* 180 Md. 389, 24 A. 2d 783.

Under Sec. 69(1) of the Act [Code, Art. 83, Sec. 87(1)]; Acts of 1910, Ch. 346, the buyer, at his election, may obtain a remedy for breach of warranty in any one of four ways, viz., (*a*) recoupment, (*b*) action for damages after accepting the goods, (*c*) action for damages after refusing to accept, and (*d*) rescission. Sec. 69(2) [Sec. 87(2)] provides: "(2) When the buyer has claimed and been granted a remedy in any one of these ways, no other remedy can thereafter be granted."

Section 87(1) (d) [Sec. 69(1) (d)], provides that the buyer may, at his election, "(d) [1] Rescind the contract to sell or the sale and [2a] refuse to receive the goods; or, [2b] if the goods have already been received, return them or offer to return them to the seller and recover the price, or any part thereof, which has been paid." [Bracketed numerals and letters inserted. In the published Acts of 1910 and in the Code there is a semicolon, instead of the comma after "goods." The Act as approved by the Governor does not contain the semicolon; nor does the Act as submitted by the Commissioners on Uniform State Laws. *Williston on Sales*, 2d Ed., Sec. 603. Whatever the punctuation, return of the goods is the alternative for refusal to receive, not for rescission. Rescission *and* return, not rescission *or* return, is required.]

Rescission of a contract, like making a contract, is a matter of intention, of both parties in case of rescission by mutual consent, of the buyer (with notice to the seller) in case of rescission for breach of warranty. In either case intention may be inferred from conduct. *Vincent v. Palmer*, 170 Md. 365, 371-373, 19 A. 2d 183. In most instances perhaps, return of the goods and the price may conclusively show an intention to rescind. Return of the goods and the price does not, however, *ipso facto* constitute rescission. *Clyde Equipment Co. v. Fiorito*, 9 Cir., 16 F. 2d 106, 197; *Black on Rescission and Cancellation*, 2d Ed., Secs. 534, 561, 569, 574; *Teter v. Shultz*, 110 Ind. App. 541, 548-550, 39 N. E. 2d 802; *Schutz v. Foster*, 191 Minn. 116, 253 N. W. 372, 106 A. L. R. 701, and note, 106 A. L. R. 703-706.

When the goods are worthless, return of them in case of rescission is not necessary, even under the Sales Act. *Williston on Sales*, 2d Ed., Sec. 610; *Wright v. Bristol Patent Leather Co.*, 257 Pa. 552, 557, 101 A. 844; *John Service, Inc. v. Goodnow-Pearson Co.*, 242 Mass. 594, 597, 598, 136 N. E. 623, 29 A. L. R. 1513. Conversely, return of worthless goods does not necessarily evidence intention to rescind.

In the instant case the pleadings show no intention to rescind; quite the contrary. The plaintiff (appellant) sues for $1,500 for personal injuries from the use of infected hair pads. At the request of the defendant (appellee) she returned the unused hair pads and "accepted credit" for the price, $1.10. In short, the goods were worthless, the price negligible. It was the defendant's duty and interest to get back the infected hair pads to prevent injury to anybody else. In the circumstances the request for return, and the return of the hair pads do not evidence an intention to rescind the contract of sale and thereby waive the plaintiff's right to damages. The plaintiff expressly denies any such intent; to infer such an intent on the defendant's part would be to ascribe to the defendant an intent to trap and cheat the plaintiff. In *Henry v. Rudge & Guenzel Co.*, 118 Neb. 260, 224 N. W. 294, relied on by the defendant, the buyer and the seller in close bargaining indicated that they did not regard the goods (a pair of shoes) as worthless or the price as negligible.

Consequently, a remedy by rescission has not been "claimed or granted" and is not a bar to this action for damages. On this ground, the judgment should be reversed.

It is, therefore, unnecessary to decide what is the relation (if any) of Sec. 70 [Sec. 88] of the Sales Act to Sec. 69(2) [Sec. 87(2)], or what implied exceptions there may be to Sec. 69(2) [Sec. 87(2)].

Section 69 [Sec. 87] of the Sales Act largely follows Section 53 of the English Sale of Goods Act, 1893, (56-57 Victoria, Ch. 71), with two marked changes, viz., the English Act (*i*) does not permit rescission for breach of warranty [53(1)], but (*ii*) permits both recoupment and a separate action for damages [53(4)] (*cf. Mondel v. Steel*, 8 M. & W. 858) and contains no such provision as Sec. 69(2) [Sec. 87(2)] for election of an exclusive remedy. In both respects the English Act followed the common law, as previously established in England and in some (but not all) jurisdictions in the United States.

Section 69(6) and (7) [Sec. 87(6) and (7)] state the general measure of damages, substantially as stated in the English Act [53(2) and (3)]. Section 70 [Sec. 88], relating to special damages, follows Section 54 of the English Act. It provides: "88. Nothing in this subtitle shall affect the right of the buyer or the seller to recover interest or special damages in any case where by law interest or special damages may be recoverable, or to recover money paid where the consideration for the payment of it has failed."

This section, instead of stating, adopts by reference, the common law rule as to special damages, as declared in *Hadley v. Baxendale*, 9 Ex. 341, and subsequent cases. *Bostock and Co., Ltd. v. Nicholson and Sons, Ltd.*, [1904] 1 K. B. D. 725, 735-737. It has no relation to Sec. 69(2) [Sec. 87(2)], which is not in the English Act.

The words of Sec. 70 [Sec. 88] and Sec. 69(2) [Sec. 87(2)] are no more related than their history. If by Sec. 70 [Sec. 88] the whole subject of special damages is excepted from the prohibition of Sec. 69(2) [Sec. 87(2)], then Sec. 69(2) [Sec. 87(2)] is practically nullified, and Sec. 70 opens a wider door to dual remedies than the English Act or the prior cases.

The draughtsman of the Act says: "Under the Sales Act it is clear that the buyer can have but a single remedy for breach of warranty." *Williston* on *Sales*, 2d Ed., Sec. 612, citing cases, including *Impervious Products Co. v. Gray*, 127 Md. 64, 96 A. 1, 3. That case, a suit for special damages, was decided both on the ground of *res adjudicata* and also on the ground of election of remedy under Sec. 69(2) [then Sec. 90, Code of 1911] of the Sales Act. This court said "that if * * * there was any breach of * * * warranty, then the buyer had four distinct courses open to him, as set out in the act; but that after having resorted to and adopted one of these courses no other remedy could thereafter be granted to him." 127 Md. 69, 96 A. 3. To the same effect see *Gerli & Co. v. Mistletoe Silk Mills*, 1910, 80 N. J. L. 128, 76 A. 335; *Joannes Brothers Co. v. Lamborn*, 237

N. Y. 207, 142 N. E. 587; *cf. Stanley Drug Co., etc., v. Smith, Kline & French Laboratories,* 313 Pa. 368, 370-373, 170 A. 274.

Section 69 (2) [Sec. 87 (2)] excludes only remedies for breach of warranty under the Act, not remedies for non-delivery (*Lander v. Samuel Heller Leather Co., Inc.,* 314 Mass. 592, 597, 598, 50 N. E. 2d 962) or for torts (*Friedman v. Swift & Co.,* D. C., 18 F. Supp. 596, 597, 598). On such subjects and on the questions what expenditures are included in "the price" under Sec. 69 (1) (*d*) [Sec. 87 (1) (*d*)] and what damages (if any) may be included in the judicial remedy of rescission, the authorities are in conflict. Such matters have been much discussed, without reaching a consensus of opinion, in law review articles and notes. See, e. g., 28 *Michigan Law Review* 26 (1929); 43 *Harvard Law Review* 328 (1929); 45 *Yale Law Journal* 1313 (1936); 21 *Minnesota Law Review* 111 (1936); 23 *Virginia Law Review* 840 (1937); 38 *Columbia Law Review* 888 (1938). No such questions need be decided in the instant case.

3. The Uniform Sales Act has been adopted in thirty-four states, the District of Columbia, Alaska and Hawaii. It was adopted in Maryland in 1910 (Acts of 1910, Ch. 346). Section 74 [Sec. 92] provides that the act "shall be so interpreted and construed as to effectuate the general purpose to make uniform the laws of those states which enact it."

In the instant case it is not necessary to construe Sec. 69 (2) [Sec. 87 (2)] or Sec. 70 [Sec. 88], or to overrule *Impervious Products Co. v. Gray,* supra, and go from one extreme to another. The case can be decided on the basis of Sec. 69 (1) (*d*) [Sec. 87 (1) (*d*)] consistently with the history of the Act and with decisions in this and other states.