EDWARD L. FELDMAN and SIDNEY D. BERNSTEIN, Plaintiffs Below, Appellants, v. JOHN G. FOULKE and HELGA I. FOULKE, Defendants Below, Appellees.

(*March* 9, 1962.)

SOUTHERLAND, Chief Justice, and WOLCOTT, Justice, and MARVEL, Vice Chancellor, sitting.

*Joseph P. Hurley* (of Michlin and Hurley) for appellants.

*Thomas H. Wingate* for appellees.

Supreme Court of the State of Delaware, No. 27, 1961.

SOUTHERLAND, Chief Justice.

Appellants Feldman and Bernstein, plaintiffs below, brought suit against appellees, the Foulkes, seeking to recover $4900 claimed to be due on a contract of sale of personal property. The Foulkes denied liability, alleged rescission and counterclaimed for damages. The case was heard by a judge without a jury. He filed an opinion sustaining the contentions of the Foulkes, dismissed the plaintiffs' claim, and then gave judgment on the counterclaim against them for $2361.53. They appeal.

The facts are these:

Prior to June 29, 1959, a certain Harry Brown owned and operated a lunch room business at 1300 Washington Street in the City of Wilmington. On that date the property and equipment in the store were sold by the Sheriff on execution sale and bought by Feldman and Bernstein.

Feldman and Bernstein negotiated with John G. Foulke for the sale to him of this property. Terms were agreed on. On August 1, 1959, Foulke took a five-year lease on the store at $165 a month. On August 12 a formal contract of sale was executed by the parties. The purchase price was $5,000. According to the contract it was payable $2500 in cash and the balance in installments. This balance was to be evidenced by judgment bond and secured by chattel mortgage. In fact, Foulke paid down only $100, because it was contemplated from the first that he would borrow the rest of the down payment from another source. The contract contained a clause

whereby the sellers warranted that there was no outstanding judgment or liens of any kind against the property sold.

Foulke entered into possession early in August, and at once applied to Foremost Dairies, Inc. for the loan that he required, to be secured by a mortgage on the equipment he had bought. Mr. Clement C. Wood, that company's counsel, said that no loan could be made until the sheriff's sale had been confirmed. The parties then executed a supplemental agreement (not dated) conditioning the consummation of the August 12th sales contract upon the confirmation of the sheriff's sale.

Mr. Wood proceeded to have a search made for liens against the equipment. He reported to his client that Feldman and Bernstein had not acquired title to the equipment sold to Foulke free of liens, because the property was sold subject to any liens of record. He found outstanding against the property a federal tax lien and three conditional sale contracts. He further reported that several items that the sheriff had purported to sell had never been levied on, and that as to these items the sale was invalid. He therefore refused to approve Foulke's application for the loan.

From September until the middle of November the parties attempted to have the liens satisfied. Apparently two of the items were actually paid in full by the sellers but were not satisfied of record until months later. The third claim appears to have been compromised. Nothing was done about the federal tax lien or with respect to the lack of title to the equipment not levied on.

While Foulke was in possession he sold one piece of equipment for the sum of $400. This money he reinvested in the business.

Efforts to clear the title having failed Foulke some time in November elected to rescind the contract and so advised the sellers. They refused to take back the property and de-

manded payment. No further payment was made, and in December 1959, the lunch room was closed. Some months later the key to the premises was delivered to the sellers' attorney. The suit followed.

The trial judge held:

1. Because of the liens against the property sold, sellers were in default of their contract from the outset. It was their duty to remove the liens and they did not do so.

2. Foulke was entitled to rescind, and did so.

3. Sellers, having refused to remove the chattels from the premises, are responsible for the rent of $165 a month which Foulke was forced to pay. Sellers must also repay the $100 deposit.

4. Sellers are entitled to a credit of $400 for the equipment sold and to the reasonable rental value of the equipment and good will of the business while Foulke operated it.

Judgment for Foulke was entered accordingly.

Appellants attack the court's decision on several grounds. They list nine "Questions Involved", but in effect they advance the following contentions:

1. *That the issue of rescission was not made by the pleadings.*

The counterclaim is perhaps not explicit in this respect; but in any event the point was not made below and will not be considered here. If it had been made, the pleadings could of course have been amended.

2. *That Foulke was required by the Sales Act, 6 Del. C. § 769(c), to notify the sellers of his election to rescind within a reasonable time; and that the wait from August 12 to December 10 was unreasonable.*

The wait was from early September, when Wood reported on the liens, until November. This time was devoted to an attempt to have the liens satisfied. The delay was not unreasonable as a matter of law.

■ *3. That the buyer could not return all the goods, as required by the Sales Act, because he had sold a piece of equipment.*

This was with the consent of one of the sellers, and in the judgment allowance was made for it. It is said that one seller could not bind the other. This point was not made below, so far as we can tell. At all events, counsel for plaintiffs, in examining Feldman, referred to Bernstein as his "partner".

■ *4. That under § 769(b) Foulke, having elected to rescind the sale, returned the goods, and recover his deposit, can have no other remedy; and hence was entitled to nothing on his counterclaim.*

This contention confuses a claim for ordinary damages for breach of warranty with the special damage flowing from the refusal of the sellers to accept the return of the goods and remove them from the premises. By so doing the sellers subjected Foulke to additional liability. Sellers now claim that the goods should have been put in storage; but even after accepting the key to the store they refused to remove them. As the court below said, this was a foolish gamble. The landlord was unwilling to release Foulke from liability for the rent until the equipment was removed, and in law the equipment belong to the sellers. Hence Foulke suffered consequential or special damages recoverable under the saving language of § 770. See *Russo v. Hochschild Kohn & Co.*, 184 *Md.* 462, 41 *A.* 2d 600, 157 *A. L. R.* 1070, and annotation at pp. 1077-1081. Such damages are necessarily recoverable, because otherwise the buyer could not be put in *statu quo*. See *Waldman Produce v. Frigidaire Corp.*, 157 *Misc.* 438, 284 *N. Y. S.* 167.

■ 5. *Since the former owner of the articles not legally sold has not asserted his title, Foulke as the buyer can not complain that the title is defective.*

This is a misconception of Foulke's position. He claims a breach of covenant against liens. As to these illegally sold articles, it cannot be denied that the federal tax lien was unaffected by the sale.

■■ 6. *The liens of record were not valid liens because (a) payments of the balances due under the conditional sales agreements were made during the fall of 1959, and (b) the sheriff's sale extinguished the federal tax lien.*

(a) Notwithstanding the payments, sellers were guilty of a breach of warranty from the first, as the trial court held and as Feldman in effect frankly admitted. Regardless of the payments, the failure to clear the record prevented Foulke from financing the purchase. Naturally, Mr. Wood refused to recommend that his client buy a lawsuit.

(b) The assertion that the federal tax lien was extinguished by the sale is contradicted by Mr. Wood's report to his client, as above noted. At all events, it was another cloud on the title.

Foulke was clearly entitled to rescind.

We find no error and the judgment is affirmed.