271 F.2d 242
 AUTHORIZED SUPPLY COMPANY OF ARIZONA, a corporation, Appellant,
v.
SWIFT & COMPANY, a corporation; Arizona York Refrigeration Company, a corporation, and Southern Arizona York Refrigeration Company, a corporation, Appellees.
ARIZONA YORK REFRIGERATION COMPANY, a corporation, and Southern Arizona York Refrigeration Company, a corporation, Appellants,
v.
SWIFT & COMPANY, a corporation, Appellee.
 No. 16274.
 United States Court of Appeals Ninth Circuit.
 October 12, 1959.
 Rehearing Granted January 11, 1960.
 
 May, Lesher & Dees, Tucson, Ariz., for Authorized Supply Co.
 Darnell, Holesapple, McFall & Spaid, Tucson, Ariz., for Arizona York Refrig. Co.
 Boyle, Bilby, Thompson & Shoenhair, Richard B. Evans, B. G. Thompson, Jr., Tucson, Ariz., for appellee.
 Before ORR, Senior Judge, and POPE and JERTBERG, Circuit Judges.
 JERTBERG, Circuit Judge.
 
 
 1
 For purposes of clarity, inasmuch as there are two separate appeals in this case, we will refer in this opinion to the parties by their designations in the district court.
 
 
 2
 The plaintiff is a corporation organized under the laws of the State of Illinois, and the other parties are corporations organized under the laws of the State of Arizona. The contract out of which the action arose was made and entered into in the State of Arizona. The amount in controversy exceeded $10,000, exclusive of interest and costs. The jurisdiction of the United States District Court for the State of Arizona was properly invoked under the provisions of Title 28 U.S.C.A. § 1332(a) (1). Jurisdiction of this Court is based upon Title 28 U.S. C.A. § 1291.
 
 
 3
 The facts in this case are not in dispute and may be summarized as follows: By contract dated May 31, 1955, plaintiff contracted with the defendant Arizona York Refrigeration Company to install certain refrigeration equipment in plaintiff's building in Tucson, Arizona. The installation required among other things two refrigeration coils. Two refrigeration coils manufactured by Bush Manufacturing Company, a Connecticut corporation, were purchased by said defendant through third-party defendant Authorized Supply Company of Arizona, the Arizona distributor for Bush Company products. The coils were shipped to the said defendant direct from the Bush factory in Connecticut and were billed to said defendant through Authorized Supply Company. The coils were installed by said defendant in plaintiff's building. After complete installation of the refrigeration equipment and in December, 1955, one of the coils developed a leak which permitted ammonia gas to escape into plaintiff's storage area causing damage to meat and other products stored there by plaintiff. The sole cause of damage was the manufacturer's defect in one of the refrigeration coils.
 
 
 4
 After the leak had been discovered and the fact of damage resulting therefrom was known to plaintiff and the other parties, said defendant (or Southern Arizona York Refrigeration Company, its successor), with the knowledge and permission of plaintiff returned the defective coil to the Bush Manufacturing Company through the third-party defendant and received in its place from Bush through the third-party defendant a new coil unit free of charge. The new unit was installed by the defendants at plaintiff's plant without costs to plaintiff.
 
 
 5
 Thereafter plaintiff brought its action against the defendants alleging negligence and breach of express and implied warranties, and seeking damages resulting therefrom. The defendants joined Authorized Supply Company as third-party defendant, alleging negligence and breach of warranty of fitness implied under Arizona law. All negligence counts were dropped on trial and both plaintiff and defendants proceeded solely on the theory of breach of warranties.
 
 
 6
 Following trial, the district court granted plaintiff judgment against the defendants in the sum of $9,175.29, and granted judgment over against third-party defendant in favor of the defendants in the same amount. The defendants have appealed from the judgment against them, and the third-party defendant has appealed from the judgment against it.
 
 
 7
 Since federal jurisdiction depends upon the diversity of citizenship we are to be governed in our decision in this case by the laws of the State of Arizona as declared by the highest court of that State. Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.
 
 
 8
 We will first consider the appeal of the defendants from the judgment entered in favor of plaintiff.
 
 
 9
 It is clear from the pleadings, the evidence, and the plaintiff's brief filed in this Court that plaintiff seeks recovery of damages against defendants only on a theory of breach of express and implied warranties of a contract for the sale of goods.
 
 
 10
 The defendants have made several specifications of error, but in our view of the case we need consider only one.
 
 
 11
 Defendants contend that plaintiff's cause of action for damages for breach of warranties was irrevocably lost by its election of the remedy of rescission afforded by Section 44-269 of Arizona Revised Statutes (see Section 69 of the Uniform Sales Act). Sub-section A provides:
 
 
 12
 "Where there is a breach of warranty by the seller, the buyer may, at his election:
 
 
 13
 1. Accept or keep the goods and set up against the seller, the breach of warranty by way of recoupment in diminution or extinction of the price.
 
 
 14
 2. Accept or keep the goods and maintain an action against the seller for damages for the breach of warranty.
 
 
 15
 3. Refuse to accept the goods, if the property therein has not passed, and maintain an action against the seller for damages for the breach of warranty.
 
 
 16
 4. Rescind the contract to sell or the sale and refuse to receive the goods or if the goods have already been received, return them or offer to return them to the seller and recover the price or any part thereof which has been paid."
 
 
 17
 The first question to be answered is: Was the contract for the purchase of the defective coil rescinded? The plaintiff recognizes the rule to be, as stated in its answering brief, "The general rule is well known, namely, that upon a sale of personal property where the goods do not measure up to the warranty, the buyer has an election to return the goods and rescind the sale or to keep the goods and sue for damages." It appears clear that such is the general rule. 77 C.J.S. Sales § 355; 46 Am.Jur. (Sales) Section 727; Williston on Sales, Section 612, 1950 Supplement; 157 A.L.R. page 1077.
 
 
 18
 Plaintiff argues, however, that no rescission can be implied because plaintiff never intended to rescind the contract, and for that reason, our decision on this point is controlled by Clyde Equipment Co. v. Fiorito, 9 Cir., 1926, 16 F.2d 106, 107. The statement of the Court in that case relied upon by the plaintiff, which appears at page 108, is as follows:
 
 
 19
 "The mere fact that personal property sold under a contract is returned to the vendor and credit given therefor on the account, does not constitute ipso facto a rescission of the contract. Whether or not property so returned and credited constitutes an abandonment of that part of the contract covering it is a matter of intention. Black on Rescission, § 534, p. 1285 [1286]." The Clyde case arose from the State of Washington. The Uniform Sales Act became law in the State of Washington on January 14, 1926. The Clyde decision was rendered on November 29, 1926. This Act is not mentioned in the opinion. The Clyde opinion contains no citation of decisions from the State of Washington, or elsewhere, on this point, and was decided a number of years prior to Erie R. Co. v. Tompkins, supra. It also appears that the holding of the Clyde case is contrary to the law of the State of Washington as it existed before and after the enactment of the Uniform Sales Act. In Houser & Haines Mfg. Co. v. McKay, 1909, 53 Wash. 337, 101 P. 894, 895, 27 L.R.A.,N.S., 925, the Supreme Court of Washington applying common law of the State of Washington stated:
 
 
 20
 "If (buyer) chose to exercise the special remedy by returning the article to the seller, he is then confined to a recovery of the purchase money paid and cannot maintain an action to recover damages for a breach of the warranty * * *" and "We have not been able to find any diversity of authority on this question."
 
 
 21
 This same rule is recognized by the Supreme Court of Washington under the Uniform Sales Act. See Crandall Engineering Co. v. Winslow Marine Ry. & Shipbuilding Co., 188 Wash. 1, 61 P. 2d 136, 106 A.L.R. 1457. In the Clyde case defendant was a manufacturer of road equipment who sold to the plaintiff rock crushing machinery which included certain rolls, which rolls proved defective and were returned to the defendant who gave plaintiff credit therefor. Thereafter plaintiff brought suit to recover special damages for breach of warranty. The trial court found as a fact there was no rescission of the contract. There was no bill of exceptions before the court, and in this regard the Court stated:
 
 
 22
 "In the instant case the return of the rolls by the plaintiffs, and the acceptance of credit therefor, may have been with the understanding, more or less definite, that the contract — which included other items than these crushing rolls — was not rescinded so far as they were concerned; and when, as here, the evidence is not before us, we must under familiar principles of law so construe the finding.
 
 
 23
 "If a finding is susceptible of two constructions, one of which supports the judgment and the other does not, the former will prevail; and whenever, from facts found, other facts may be inferred which will support the judgment, such inferences will be deemed to have been drawn. The findings of fact by a trial court must receive such a construction as will uphold, rather than defeat, its judgment. Burleigh v. Consumers Publishing Co., 95 Wash. 49, 50, 51, 163 P. 5; Breeze v. Brooks, 97 Cal. 72, 31 P. 742, 22 L.R.A. 256."
 
 
 24
 In the instant case all the evidence before the district court is before us. The evidence in this case establishes that plaintiff, with complete knowledge of the breach of the warranties and of the fact of damages resulting therefrom, permitted the removal from its building of the defective equipment, its return to the manufacturer, and the replacement without expense to it of the new equipment. Plaintiff does not contend that in connection with such transactions it reserved a claim for damages resulting from the breach of the contract, or that there was any understanding or conversation whatever concerning rescission or the reservation of any rights. Subsection A4 of Section 44-269, Arizona Revised Statutes, in its pertinent parts provides that where there is a breach of warranty by the seller, the buyer may, at his election, rescind the contract, return the defective article purchased to the seller, and recover the purchase price which has been paid. This section is plain, clear, and unambiguous. Under the Arizona statute it appears that rescission follows as a matter of law the return of the property, and the return operates as a conclusive presumption of law that the buyer intended to rescind. Such appears to be the law of the State of Arizona. In the Superior Court case of Roberts v. J. C. Penney Co., Superior Court of Maricopa County, Arizona, No. 76505 (1954), the plaintiff purchased a pair of shoes from defendant. Three or four days later, she noticed a defect in them. She returned them to defendant, which replaced them with a new pair. Plaintiff thereafter brought an action for breach of implied warranty under the Uniform Sales Act, alleging the defect had caused injury to her feet. A motion by the defendant for summary judgment under the then Section 52-578, A.C.A., 1939, (now A.R.S. Sec. 44-269), was granted, the court's written opinion saying:
 
 
 25
 "It is the court's opinion that * * * a buyer cannot rescind and at the same time retain his rights to sue for special damages under the provisions of (The Act). Whether or not this be a harsh and unjust rule is for legislative determination and not for judicial determination under the and in contravention of the plain language of the statute."
 
 
 26
 For the reasons stated we do not consider the Clyde case to be binding upon us in the instant case. We hold that under the facts of this case and the law of the State of Arizona the contract between plaintiff and defendants was rescinded.
 
 
 27
 Plaintiff contends that even if the contract were rescinded it, nevertheless, under the law of the State of Arizona may hold defendants liable for damages resulting from a breach of express or implied warranties as an exception to the general rule above stated. On this point, plaintiff relies upon Section 44-270, Arizona Revised Statutes, which provides, "Nothing in this chapter shall affect the right of the buyer or the seller to recover interest or special damages in any case where by law interest or special damages may be recoverable, or to recover money paid where the consideration for the payment of it has failed." So far as we are aware and have been advised by counsel, this section has not been directly construed or passed upon by the courts of Arizona. Another section of the Uniform Sales Act of Arizona, however, has been passed upon by the courts of Arizona. Subsection B of Section 44-269, of Arizona Revised Statutes, provides: "When the buyer has claimed and been granted a remedy in any one of these ways, no other remedy can thereafter be granted."
 
 
 28
 The law in Arizona appears to be well settled that the remedies provided by Section 44-269, Arizona Revised Statutes, are mutually exclusive. In Yancy v. Jeffreys, 1932, 39 Ariz. 563, 8 P.2d 774, 775, the Arizona Supreme Court held:
 
 
 29
 "This transaction presents a purchase and sale. The general rule of law is that, in case the terms of the sale are breached by the seller, the buyer has several remedies among which he may choose. He may either (a) affirm the sale, notwithstanding the breach, and carry out his part of the agreement; (b) rescind the sale, returning the property and recovering anything already paid on the purchase price; (c) affirm the sale, and, if he has been damaged by the breach of the contract by the seller, set off the amount of damage on a suit by the seller for the balance of the purchase price; or (d) sue the seller for damages. 55 C.J. 1072. He must, however, elect between these remedies, and is bound by his election."
 
 
 30
 The quotation set forth above was set out verbatim in California Steel Products Co. v. Wadlow, 1941, 58 Ariz. 69, 118 P.2d 67, 70, as being the law of Arizona, the Court therein further saying: "The sales statute provides that when a buyer has claimed and has been granted a remedy in any one of these ways, no other remedy can thereafter be granted."
 
 
 31
 In support of its contention plaintiff has called our attention to three decisions from other jurisdictions. They are Russo v. Hochschild Kohn & Co., Inc., 184 Md. 462, 41 A.2d 600, 157 A.L.R. 1070; Marko v. Sears, Roebuck & Co., 24 N.J. Super. 295, 94 A.2d 348, 352; Garbark v. Newman, 155 Neb. 188, 51 N.W.2d 315. These decisions hold, as stated in the Marko case:
 
 
 32
 "The purpose and effect of the provision of the Uniform Sales Act that the buyer or seller may recover special damages in any case where the law permits the recovery of such damages is to permit the recovery of special damages without regard to whether the transaction to which they are incidental has been rescinded or affirmed."
 
 
 33
 Admittedly, these three cases are at variance with the overwhelming weight of authority in the United States, which is to use the language of sub-section B of Section 44-269, "When the buyer has claimed and been granted a remedy in any one of these ways, no other remedy can thereafter be granted." Section 44-270 was enacted at the same time as Section 44-269, but the courts of Arizona have not applied Section 44-270 to limit the exclusiveness of the remedy provided for in sub-section A, Section 44-269. Furthermore, Section 44-270 by its terms applies to the "right of the buyer or the seller to recover interest or special damages in any case where by law interest or special damages may be recoverable * * *" (Emphasis added) Plaintiff has not established the instant case is one in which "by law interest or special damages may be recoverable". Special damages are certainly not recoverable under sub-section A, Section 44-269. Sub-section B, Section 44-269, certainly does not provide for special damages. We hold that Section 44-270 is inapplicable to the instant case, and in our opinion the reviewing courts of Arizona have not and would not adopt the views expressed in the three decisions relied upon by plaintiff. We agree with the statement made by the Superior Court of the County of Maricopa, Roberts v. J. C. Penney Co., supra, "Whether or not this be a harsh and unjust rule is for legislative determination and not for judicial determination under the and in contravention of the plain language of the statute."
 
 
 34
 It follows from what we have said that the judgment in favor of plaintiff and against the defendants must be and is hereby reversed.
 
 
 35
 The appeal of the third-party defendant from the judgment over against it in favor of the defendants may be quickly disposed of. It necessarily follows that in our reversal of the judgment in favor of the plaintiff and against the defendants, and for the reasons therein stated, the judgment over against the third-party defendant and in favor of the defendants must be and is hereby reversed.